People v Wade (2019 NY Slip Op 03851)





People v Wade


2019 NY Slip Op 03851


Decided on May 16, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 16, 2019

109920

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Appellant,
v
JEROME WADE, Respondent.

Calendar Date: February 11, 2019

Before: Garry, P.J., Lynch, Clark, Devine and Pritzker, JJ.


Mary Pat Donnelly, District Attorney, Troy (Jacob B. Sher of counsel), for appellant.
Linda B. Johnson, East Greenbush, for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from an order of the Supreme Court (Ceresia, J.), entered October 18, 2017 in Rensselaer County, which granted defendant's motion to suppress evidence.
Defendant's parole officer, Alexander Rosa, and six members of his parole unit conducted a search of defendant's residence after receiving a tip from another parolee (hereinafter the informant) concerning potential drug activity at that location. During the search, the officers located a box of ammunition in plain view above a kitchen cabinet and then located a plastic bag containing cocaine above the kitchen ceiling panels. As a result, defendant was indicted on charges of criminal possession of a controlled substance in the second degree and criminally using drug paraphernalia in the second degree. Following a suppression hearing, Supreme Court determined that the search was unlawful and granted defendant's motion to suppress the evidence. The People appeal.
Although a parolee does "not surrender his [or her] constitutional rights against unreasonable searches and seizures[,] . . . what may be unreasonable with respect to an individual who is not on parole may be reasonable with respect to one who is" (People v Huntley, 43 NY2d 175, 181 [1977]; see People v Porter, 101 AD3d 44, 47 [2012], lvs denied 20 NY3d 1064, 1065 [2013]). Accordingly, a search of a parolee undertaken by a parole officer is constitutional if "the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty . . . [and was] substantially related to the performance of duty in the particular circumstances" (People v Huntley, 43 NY2d at 181). A parole officer's duty is twofold and sometimes inconsistent in nature because a parole officer not only "has an obligation to detect and to prevent parole violations for the protection of the public from the commission of further crimes[, but] he [or she] also has a responsibility to the parolee to prevent violations of parole and to assist [the parolee] to a proper reintegration into [the parolee's] community" (id.).
Here, there can be little doubt that Rosa's search of defendant's residence due to the informant's tip was reasonably related to Rosa's duties as a parole officer (see People v Burry, 52 [*2]AD3d 856, 858 [2008], lv dismissed 10 NY3d 956 [2008]; see generally People v Johnson, 94 AD3d 1529, 1531-1532 [2012], lv denied 19 NY3d 974 [2012]; People v Vann, 92 AD3d 702, 702-703 [2012], lvs denied 19 NY3d 868 [2012]). Therefore, the key inquiry is whether Rosa, based upon the information provided by the informant, had reasonable suspicion to conduct the search (see People v Porter, 101 AD3d at 46-48; People v Burry, 52 AD3d at 858-859). Rosa's testimony at the suppression hearing revealed that the information was not from an anonymous tipster (compare People v Burry, 52 AD3d at 858), but rather was from another parolee with whom Rosa was familiar and with whom he had interacted prior to receiving the information. Rosa testified that the informant indicated that he or she had firsthand knowledge of the drug activity at defendant's residence. Therefore, based upon the circumstances of this case — including that defendant had been on parole for less than a month and therefore had no proven track record of compliance with parole rules — Rosa's search of defendant's residence was founded on reasonable suspicion and, as such, was lawful (see People v Farmer, 136 AD3d 1410, 1410-1411 [2016], lv denied 28 NY3d 1027 [2016]; People v Smith, 234 AD2d 1002, 1002 [1996], appeal denied 89 NY2d 988 [1997]; People v Adams, 36 AD2d 784, 785 [1971]). Therefore, Supreme Court erred in granting defendant's motion to suppress evidence.
Garry, P.J., and Devine, J., concur.




Lynch, J. (dissenting).


We respectfully dissent. Where, as here, a search is conducted by a parolee's own parole officer, the reasonableness of the search is measured by whether the parole officer's conduct "was rationally and reasonably related to the performance of [his or her] duty" (People v Huntley, 43 NY2d 175, 181 [1977]; see People v Porter, 101 AD3d 44, 47 [2012], lvs denied 20 NY3d 1064, 1065 [2013]). Under the standard conditions of defendant's parole, Alexander Rosa, defendant's parole officer, was authorized to visit defendant's residence and conduct a search and inspection. Pertinent in this regard, Rosa, who had been supervising defendant for less than a month, had already visited and approved defendant's residence. Moreover, this standard condition is not a blanket waiver, as a parolee "[does] not surrender his [or her] constitutional rights against unreasonable searches and seizures" (People v Huntley, 43 NY2d at 180-181). There still needs to be reasonable suspicion to validate the search of a parolee's residence (see People v Porter, 101 AD3d at 46-48; People v Burry, 52 AD3d 856, 858-859 [2008], lv dismissed 10 NY3d 956 [2008]). Stated otherwise, Rosa testified that departmental policy required "an articulable reason to search a parolee's residence." We agree with Supreme Court that the People failed to satisfy this standard.
Rosa acknowledged that the search was primarily prompted by information received the day before from a confidential informant of "possible narcotic activity happening at the residence." Rosa knew the informant, but had not previously used the informant as a source of information. There was no indication that the informant had purchased drugs at the residence, and Rosa did not inquire as to the basis for the informant's statement. Nor did Rosa otherwise seek to independently confirm the information provided. As a consequence, the informant's basis of knowledge and reliability were not adequately demonstrated. Nor does the discovery of the box of ammunition while the search was underway salvage the validity of the search. We recognize, as Rosa confirmed, that defendant's possession of the ammunition constituted a parole violation. Even so, there has to be reasonable suspicion to initiate a search in the first instance. After finding the box of ammunition, Rosa explained that the search simply "continued." This is not a situation where a search of a residence was prompted by the discovery of a prohibited item in plain view during a routine home visit (see People v Walker, 80 AD3d 793, 793-794 [2011]). As evidenced by the search team that Rosa had assembled, this was not a routine home inspection and, but for the informant's tip, Rosa would not have been there. As such, it is our view that Supreme Court properly granted defendant's motion to suppress the evidence seized.
Clark, J., concurs.
ORDERED that the order is reversed, on the law, motion denied, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.